IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VIKTOR I. NATEKIN,<br><br>                Petitioner,<br><br>vs.<br><br>EARL HOUSER, Superintendent, Goose Creek Correctional Center,<br><br>                Respondent.. | No. 3:21-cv-00030-JKS<br><br>ORDER<br>[Re: Motion at Docket No. 14]<br>and<br>MEMORANDUM DECISION |

Viktor I. Natekin, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Natekin is in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Goose Creek Correctional Center. Respondent has answered, and Natekin has replied. Also pending before the Court is Natekin's renewed request for the appointment of counsel at Docket No. 14.

I.  BACKGROUND/PRIOR PROCEEDINGS

On January 3, 2007, Natekin was charged with attempted first-degree sexual assault (Count I) and second-degree sexual assault (Count II) in an indictment alleging that, at the age of 37, he assaulted, groped, and fondled 17-year-old J.M. in December 2006. On direct appeal of his conviction, the Alaska Court of Appeals recounted the following facts underlying the charges against Natekin:

-1-

On December 26, 2006, 17–year–old J.M. was visiting her friend Dubravka Stewart. Stewart lived in the same apartment complex as Lilly Zidrashko, another of J.M.'s friends. Because Zidrashko was in the process of moving out of the apartment complex, J.M. went over to Zidrashko's apartment to retrieve some belongings that she had left there.

When J.M. arrived at Zidrashko's apartment, she found 37–year–old Viktor Natekin (who was also friends with J.M.) and another man, Anatoly Gravolnik. Natekin and Gravolnik were there to help Zidrashko move, but when J.M. arrived, no actual "moving" was taking place. Instead, Zidrashko, Natekin, and Gravolnik were in the kitchen dancing, eating, and drinking. All three of them were "very intoxicated."

J.M. collected her belongings and then used Zidrashko's bathroom. When she exited the bathroom, Natekin grabbed her, dragged her into the bedroom, shut the door, and pulled her to the floor. Natekin got on top of J.M., and then he started both kissing and strangling her. While this was happening, J.M.'s cell phone rang. She tried to answer it, but Natekin grabbed the phone and threw it against the wall.

Natekin ripped J.M.'s shirt open, and then he kissed and sucked on her breasts. J.M. was screaming and crying and pleading with Natekin to stop. She hit him and kicked him in an effort to get him off of her, but Natekin sat on her chest and pinned her arms down. He unbuttoned her pants and stuck his hand down her pants, inside her underwear, but he did not penetrate her genitals. Natekin put his hands over J.M.'s face to stifle her screams, and she drifted in and out of consciousness from lack of oxygen.

Natekin then took his belt off and unzipped his pants. He requested that J.M. give him oral sex. Eventually, J.M. told Natekin that she would do what he wanted, and he got off of her. At this point, J.M.'s friend Dubravka Stewart called her on her cell phone. J.M. grabbed the cell phone and was able to ask for help before Natekin again seized the phone and threw it aside.

Natekin now grabbed J.M. by the hair and throat, and jerked her backwards. Stewart, meanwhile, hastened to the apartment, went inside, and kicked in the bedroom door. When Stewart entered the room, Natekin got off of J.M., and J.M. was able to run out of the room. The entire attack lasted approximately 30 to 40 minutes.

Stewart took J.M. back to her apartment, and then Stewart called the police. Natekin was arrested and charged with one count of attempted first-degree sexual assault (*i.e.*, attempted non-consensual sexual penetration) and one count of second-degree sexual assault (*i.e.*, non-consensual sexual contact).

*Natekin v. State*, Nos.A-10393, A-10394, 2011 WL 5904467, at *1-2 (Alaska Ct. App. Nov. 23, 2011).

On post-conviction review, the Court of Appeal described the first two plea offers[1] the State made to Natekin:

Early in the case, the State proposed that if Natekin pleaded guilty to the attempted sexual assault charge, the State would agree to a sentence of 25 years to serve. Natekin apparently either rejected or never responded to this offer.

Several months later, shortly before Natekin's trial was scheduled to begin, the State made a second offer: if Natekin pleaded guilty to second-degree sexual assault, the State would agree to a sentence of 10 years to serve. When court convened the next day,

---

[1] The State extended a total of three plea offers to Natekin.

>     the prosecutor told the court about the new plea offer, and Natekin's attorney asked for time to speak to her client.
>         Natekin's attorney also informed the court that she did not have a court-certified Russian interpreter. (Natekin is a Russian national, and his native language is Russian.) However, the defense attorney told the court that Natekin's friend and family pastor, Sergiy Korelov, was available to serve as interpreter while she and Natekin discussed the State's offer. The court had Korelov take the interpreter's oath,[2] and then Korelov participated (as interpreter) in the conference between Natekin and his defense attorney.
>         The result of this conference was that Natekin did not accept the State's second offer, and his trial began.

*Natekin v. State*, No. A-12579, 2019 WL 5425497, at *2 (Alaska Ct. App. Oct. 23, 2019).

Early in the trial, J.M. was subpoenaed to give testimony on the morning of November 15, but she failed to appear. The trial judge issued a material witness warrant, as requested by the prosecution, and J.M. was picked up that evening. The next morning, the trial judge held a hearing outside of the jury's presence to investigate why J.M. had not come to court the previous day. At the hearing, J.M. stated that she had been contacted by both Natekin's wife and brother, both of whom offered her money if she did not testify against Natekin. According to J.M., she decided not to take the money but ultimately refused to come to court because she was scared to testify.

---

[2]    The Court takes judicial notice that the interpreter's oath used by the Superior Court at the time required Korelov to "solemnly swear [to] truthfully interpret the testimony . . . to the utmost of his ability." *See Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1051 n. 3 (9th Cir. 2005) ("Materials from a proceeding in another tribunal are appropriate for judicial notice.") (internal quotation marks and citation omitted)). Under Alaska Rule of Evidence 604,

> [a]n interpreter is subject to the provisions of these rules relating to qualifications as an expert and to the administration of an oath or affirmation that the interpreter will make a true translation of all communications to and from the person for whom the interpretation is made. In determining whether an interpreter is qualified and impartial, the court shall inquire into and consider the interpreter's education, certification and experience in interpreting relevant languages; the interpreter's understanding of and experience in the proceedings in which the interpreter is to participate; and the interpreter's impartiality. Parties to the proceedings may also question the interpreter concerning the interpreter's qualifications and impartiality.

Federal Rule of Evidence 604 provides that "[a]n interpreter must be qualified and must give an oath or affirmation to make a true translation." Natekin does not challenge Korelov's oath.

Following J.M.'s testimony, the judge engaged in a lengthy discussion with the prosecution and defense as to whether J.M. should be allowed to repeat that testimony when she testified in front of the jury. The judge referred to that hearing as "confidential" because the prosecution was concerned that, if the defense informed Natekin's wife that she was being investigated, it might hinder the prosecution's investigation of any bribery charges. The following day, J.M.'s testimony in front of the jury included an account of the bribery attempt, and Natekin's attorney cross-examined her about the allegation.

Following J.M.'s testimony and in the midst of trial, the State made a third plea offer to Natekin. Under the offer, if Natekin pleaded guilty, the State would not pursue criminal charges against his wife. Natekin refused the State's third offer, and the trial resumed. Natekin took the stand and testified that, although he had used physical force against J.M., he did so only because he believed that J.M. had stolen his wallet. Natekin claimed that he only used force to retrieve his wallet, and nothing sexual occurred.

At the conclusion of trial, the jury found Natekin guilty as charged. The Superior Court sentenced him to a composite term of 45 years' imprisonment, with 30 years in jail. The judge applied one statutory aggravating factor and no mitigating factors in determining Natekin's sentence.

Through counsel, Natekin appealed his conviction, arguing that: 1) the trial court violated Natekin's right to a public trial when it conducted confidential hearings on J.M.'s initial failure to appear at trial; 2) the trial court interfered with Natekin's right to call his wife as a witness; 3) the trial court erred in not allowing Natekin to cross-examine J.M. concerning her use of controlled substances; 4) the trial court erred in not merging the second-degree sexual assault conviction with the attempted first-degree sexual assault conviction; 5) the trial court erred in amending the oral judgment in violation of the constitutional guarantee against double jeopardy; and 6) the trial court imposed an excessive composite sentence. The Alaska Court of Appeal concluded that the Superior Court must merge Natekin's two convictions into a single conviction

for attempted first-degree sexual assault, and remanded to that court for re-sentencing. *Natekin*, 2011 WL 5904467, at *17. The appellate court unanimously affirmed the judgment against Natekin in all other respects. *Id.* Natekin filed a petition for hearing in the Alaska Supreme Court, which was summarily denied on February 12, 2012.

In April 2013, Natekin filed pursuant to Alaska Rule of Criminal Procedure 35.1 a counseled application for post-conviction relief ("PCR") raising the following four claims of ineffective assistance: 1) counsel failed to meaningfully inform him of the state's second plea or explain the risks if he declined the offer; 2) counsel failed to adequately investigate the claims against him; 3) counsel failed to impeach J.M. at trial with prior inconsistent statements; and 4) counsel failed to prepare Natekin to testify or to advise him as to the potential consequences of his testimony. The Superior Court held an evidentiary hearing at which it heard testimony from Natekin, his trial counsel, the prosecutor, and the family friend counsel used to explain the offer to Natekin. An attorney also testified on Natekin's behalf as an expert witness.

At the conclusion of the hearing, the Superior Court judge issued a lengthy, detailed opinion setting forth his findings of fact and conclusions of law. Although the judge found that counsel had acted incompetently by failing to hire a court-certified interpreter to explain the second plea offer to Natekin and by failing to adequately investigate the claims against Natekin, the judge ultimately determined that Natekin failed to prove prejudice as a result of either inaction. The judge further found that counsel acted competently with respect to the cross-examination of J.M. and her preparation of and consultation regarding Natekin's testimony.

Natekin appealed the denial of his PCR application to the Alaska Court of Appeals. On appeal, Natekin argued that he had established prejudice as to both counsel's failure to adequately investigate the case and her failure to explain the second plea offer to him. He further argued that he was prejudiced as a result of counsel's failure to adequately prepare him to testify and that, through her choice of defense (the success of which required Natekin's testimony) counsel had usurped his right to decide whether to testify. The Court of Appeal

unanimously affirmed the PCR denial in a reasoned, unpublished opinion issued on October 23, 2019. *See Natekin*, 2019 WL 5425497, at *8. Natekin filed a petition for rehearing in which he challenged the trial court's failure to question him personally to determine whether his decision to testify was voluntary and knowing. The Court of Appeals denied the petition. Natekin then filed in the Alaska Supreme Court a petition for hearing raising solely the claim from his petition for hearing—whether the trial court had failed to conduct a personal inquiry to determine if Natekin's decision to testify was knowing and voluntary.³ The Supreme Court denied the petition without comment on January 26, 2021.

Natekin then filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated February 9, 2021, the timeliness of which Respondent does not contest. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2). Briefing is now complete, and the Petition is ripe for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Natekin raises a single claim of ineffective assistance of counsel. Specifically, Natekin avers:

> My trial attorney never gave me charging documents translated into Russian Language. Never hired an interpreter so I could understand what I was charged with. Never investigated or hired an investigator to investigate the facts of my case. Never collected DNA samples that would have proved my innocence. Never informed me of what the State's plea offer was. My attorney forced me to testify.

---

³ Under Alaska law, a court is required to conduct an on-the-record inquiry as to voluntariness where a defendant chooses not to testify. *See LaVigne v. State*, 812 P.2d 217 (Alaska 1991). In the petition for hearing, counsel argued only that the court had an affirmative duty to conduct a similar inquiry to Natekin's decision to take the stand. But under federal law, a court does not even have a general duty to inform a defendant of the right to testify, nor does waiver of the right to testify generally have to occur in court on the record. *See United States v. Edwards*, 897 F.2d 445, 446 (9th Cir.1990). Accordingly, counsel preserved for federal habeas review only a non-cognizable state law claim. *See Mute v. Stolc*, No. 4:08-cv-00010, 2011 WL 4620945, at *5-6 (D. Alaska Sept. 2, 2011).

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Natekin argues that he was deprived of his right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice

standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Natekin must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

A.  **Exhaustion**

As an initial matter, Respondent urges the Court to dismiss Natekin's Petition as unexhausted and procedurally defaulted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. To satisfy the "fairly present" requirement, the petitioner must present his or her federal claim to "each appropriate court

(including a state supreme court with powers of discretionary review)" so that the each court is alerted to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam). In Alaska, this means that claims must first be presented to the Alaska Superior Court. If the petitioner disagrees with that result, the claim should be raised to the Alaska Court of Appeals, and if he disagrees with that result, the claim should be raised in a petition for hearing to the Alaska Supreme Court.

Respondent correctly argues that Natekin failed to exhaust his ineffective assistance of counsel claim because he raised before the Alaska Supreme Court in his petition for review only his claim challenging the trial court's failure to question him personally as to the voluntariness of testimony. Natekin thus did not raise before the state's highest court any component of the ineffective assistance claim he now raises in the Petition. This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). Consequently, Natekin's unexhausted ineffective assistance claim is procedurally defaulted from federal habeas review and subject to denial on that basis.

**B.** **Merits**

Moreover, even if Natekin had exhausted fully his ineffective assistance of counsel claim, he would not be entitled to relief on it. For the reasons discussed below, the Court also denies relief on the merits of Natekin's ineffective assistance claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**1.** *Claims relating to the use of an interpreter*

Natekin first faults counsel for: 1) failing to have the charging documents translated into Russian and 2) relying on an uncertified interpreter, Natekin's family friend Sergiy Korelov, during their pre-trial meetings and when the court-certified interpreter did not appear on the first

day of trial due to a storm.[4] Natekin also asserts, as he did in his PCR application, that trial counsel "[n]ever informed [him] of what the State's plea offer was." The Court of Appeal recounted the following facts underlying this claim:

> As we have explained, the State made its second plea offer to Natekin shortly before his trial began. Under the terms of this offer, Natekin would plead guilty to second-degree sexual assault and he would receive a sentence of 10 years to serve. When Natekin testified in support of his petition for post-conviction relief, Natekin asserted that he was never informed of this second plea offer.
> Natekin acknowledged that he had a private conference with Sheldon just before his trial began, with Korelov serving as their interpreter. But Natekin declared that he never understood what the purpose of this conference was. More specifically, Natekin testified that he never understood that the State had made the second plea offer, and that he never knew what the terms of this second offer were, until after his trial was over.
> The superior court also heard testimony from the other two participants in this pre-trial conference: Sheldon and Korelov.
> Sheldon testified that, during this conference, she and Natekin had a lengthy discussion about the State's plea offer. Sheldon said that she and Natekin talked about the consequences of rejecting the State's offer and going to trial, including the possible outcomes of the trial and the likely consequences if Natekin went to trial and was convicted.
> Korelov corroborated Sheldon's account in key respects. He testified that Sheldon and Natekin actively discussed the potential consequences of accepting or rejecting the State's plea offer. And although Korelov admitted that he was not a professional or certified interpreter, he assured the court that he had understood what Sheldon was telling Natekin, and that he translated everything that Sheldon said.
> After hearing this competing testimony, the superior court found that Sheldon's description of the plea discussion was credible, and that Natekin's contrary testimony was not. That is, the court found that Natekin had indeed discussed the State's plea offer with Sheldon, and that Natekin had understood both the terms and the potential consequences of the State's offer, including Natekin's likely deportation to Russia if he was convicted of felony sexual assault. The court further found that Natekin had actively considered the State's offer and had knowingly decided to reject it — because he preferred "to take his chances" at trial.
> Based on these findings, the superior court rejected Natekin's claim pertaining to the State's second plea offer.

*Natekin*, 2019 WL 5425497, at *3-4.

In his Petition, Natekin renews his argument that he never understood the purpose of his pre-trial conference and never received a competent translation of what his attorney was explaining. He therefore contends that he did not comprehend the plea discussions, and his decision about the plea offer was therefore unknowing, uninformed, and unintelligent. But as the

---

[4] The record reflects that a court-certified interpreter translated for Natekin at trial, with the exception of the first day of trial.

-11-

Court of Appeal explained, "the superior court (after hearing competing testimony on this issue) found that Natekin *had* understood the discussion, and that Natekin knowingly chose to reject the State's plea offer because he preferred to 'take his chances' at trial." *Id.* at *4. "Based on the evidence presented at the hearing, the superior court concluded that even though Korelov was not a certified interpreter, his translation was adequate to the purpose, and Natekin sufficiently understood the conversation to make an informed decision about the State's plea offer." *Id.* This Court must defer to the state court's finding unless Natekin rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

Natekin fails to satisfy this heavy burden. "[N]o sort of factual finding[ ] is more appropriate for deferential treatment than . . . a state court's credibility determination." *Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986). "'Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Id.* (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The record fully supports the superior court's credibility determination, and Natekin provides no evidence that would cause the Court to question it.[5] Accordingly, Natekin is not entitled to relief on this ground.

---

[5] Notably, the record reflects that, at the time she represented Natekin, defense counsel had done roughly a hundred or more criminal trials in her near-decade of experience as a criminal defense attorney. Likewise, a review of the Alaska court records shows that Natekin pled no contest to felony driving under the influence with two priors in March 2006, about a year and a half before the plea offer discussion at issue occurred in November 2007, and also pled to numerous misdemeanor traffic and other violations before being charged in this case. The record therefore supports the court's determination that defense counsel was an experienced defense attorney who demonstrated "willingness to fall on her sword regarding what she often stated was her inadequate work on the case," and that Natekin "was not a stranger to the criminal justice system." Docket No. 9-21 at 11, 21. The record further supports the court's determination that "this was not a particularly complicated case" that "turned entirely on the relative credibility of the victim and Mr. Natekin," and "both the relevant applicable sentences and the deportation ramifications were quite straightforward." *Id.* at 20-21.

### 2. *Failure to investigate*

Natekin next alleges that trial counsel's investigation of his case was deficient because she never "investigated or hired an investigator" and failed to "collect[] DNA samples that would prove [his] innocence." In considering this claim on PCR review, the Superior Court agreed that his trial attorney was incompetent for failing to conduct any substantive investigation of the case prior to trial after the trial attorney testified and conceded as such. The court nonetheless concluded that Natekin failed to established prejudice—i.e., he failed to show any reasonable probability that any additional investigation would have uncovered evidence favorable to Natekin's case. On appeal, the Court of Appeals agreed, concluding that "Natekin failed to show that more investigation would have uncovered anything material to Natekin's case (either favorable or unfavorable to him)" that would have affected the outcome of trial or materially changed the plea discussions. *Natekin*, 2019 WL 5425497, at *5.

Natekin again fails to provide in the instant Petition any evidentiary support for his speculative claim that he was prejudiced by counsel's inadequate investigation. Just as his claim was denied on state habeas review, the lack of evidentiary support is also fatal to his claim on federal habeas review. *See Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (per curiam) (holding that state habeas petitioner carries the burden of proof); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("self-serving statement" insufficient to raise claim for relief). Natekin is thus not entitled to relief as to counsel's inadequate investigation.

### 3. *Coerced testimony*

Finally, Natekin claims that his trial counsel forced him to testify. It appears that Natekin renews his claim, originally raised on appeal of the denial of his PCR application, that trial counsel chose a defense strategy that required Natekin's testimony, thus usurping his decision of whether to take the stand. The Court of Appeals concluded that Natekin failed to raise that claim on PCR review in the Superior Court, and it was therefore not preserved for appeal. *Natekin*, 2019 WL 5425497, at *7.

The forfeiture of an issue, as matter of state procedure, is an independent and adequate state law ground for blocking federal habeas corpus review. *See Stewart v. Smith*, 536 U.S. 856, 861 (2002). The Supreme Court has recognized that a state court's ruling that a litigant failed to preserve an issue may be treated as forfeiture of that issue on federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 85-86 (1977); *cf. Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004). Consequently, Natekin is likewise barred from raising that claim here.

In any event, the claim also fails on its merits. As the Court of Appeals explained:

> [I]t was *Natekin* who told [trial counsel], in an early interview, that he used force against J.M., but only because he was trying to retrieve his wallet from her. Given Natekin's version of events, [trial counsel's] options were limited. And in the superior court, Natekin never identified an alternative defense strategy that would not need to be supported by his testimony. Indeed, Natekin's own expert witness — an experienced defense attorney—testified that Natekin's case was the type of case where "[Natekin] had to testify in order to have any defense."

*Natekin*, 2019 WL 5425497, at *7.

Moreover, the Superior Court found that "Mr. Natekin did speak to his attorney on several occasions and at some length about the need for and risks of his testimony. And he was not told to testify—he was given the option to do so." Docket No. 9-21 at 37. Natekin provides no evidence—much less clear and convincing evidence—that would override the presumption of correctness this Court must afford that factual finding. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. In sum, Natekin is not entitled to relief on any argument advanced in support of his ineffective assistance claim.

C.     **Certificate of Appealability**

Having determined that habeas relief is not warranted, the Court must now consider whether to grant a certificate of appealability, which is required for a party to appeal a district court's decision on a § 2254 petition. *See* Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts; FED. R. APP. P. 22(b)(1). A "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2).  To satisfy the showing required by Section 2253(c)(2), the petitioner must show that reasonable jurists could debate whether the petition should have been resolved differently or that the issues presented are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Where, as here, a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.  This standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller–El*, 537 U.S. at 336.

This Court found here that Natekin's Petition was not fully exhausted because the petition for hearing in the Alaska Supreme Court on PCR review did not re-assert Natekin's ineffective assistance claims raised before the Court of Appeals.  Because it appears that Natekin can no longer raise his ineffective assistance claims to the Alaska Supreme Court, those claims are procedurally defaulted.  The Ninth Circuit has explained, however, that:

> [i]f a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640; *Sawyer v. Whitley*, 505 U.S. 333, 339-40, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992).  An objective factor outside of a petitioner's control (*e.g.*, ineffective assistance of counsel or a basis for the claim that was previously unavailable) could constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).  The petitioner can meet the prejudice prong if he demonstrates "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)).  A petitioner can demonstrate a fundamental miscarriage of justice by "establish[ing] that under the probative evidence he has a colorable claim of factual innocence." *Sawyer*, 505 U.S. at 339, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (quotation marks omitted).

*Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

Having reviewed the record thoroughly, the Court concludes that reasonable jurists could find debatable whether Natekin's procedural default should be excused due to appointed counsel's failure to raise the ineffective assistance claim in the petition for hearing, and that at least one issue presented is adequate to deserve encouragement to proceed further. Accordingly, the Court will grant a certificate of appealability solely with respect to Natekin's claim that counsel was ineffective for failing to hire a court-certified interpreter for his discussions with counsel regarding the State's second plea offer.

D.  **Renewed Motion for Counsel** (Docket No. 14)

Finally, Natekin argues that he needs the assistance of appointed counsel to protect his rights and file an amended reply in this case. The Court notes, however, that it has access to and has reviewed his underlying case record, including the relevant transcripts of the trial and the evidentiary hearing on his petition for post-conviction relief, as well as his counseled direct appeal and counseled petition for post-conviction relief. Natekin has now been represented by two attorneys in raising these claims in his state PCR application. He fails to show that the interests of justice require this Court to appoint a third such attorney here. Accordingly, the Court will not reconsider its prior order at Docket No. 5 denying Natekin's request for the appointment of counsel in these proceedings.

But because the Court has granted a certificate of appealability as to Natekin's claim that counsel was ineffective for failing to hire a court-certified interpreter for the discussion regarding the State's second plea offer, Natekin now has the right to appeal this Court's decision with respect to that issue. Should Natekin choose to file a notice of appeal in this Court within thirty (30) days of the date of this Order, that action will initiate his appeal in the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 4(a)(1)(A). If Natekin wishes to have counsel represent him on appeal, he should then re-file his request for counsel in the Ninth Circuit, and his request should be accompanied by an updated Form 23 Financial Affidavit similar to the one he submitted to this Court.

## V. CONCLUSION AND ORDER

Natekin is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Renewed Motion for the Appointment of Counsel at Docket No. 14 is **DENIED WITHOUT PREJUDICE** to renewing that request before the Ninth Circuit Court of Appeals.

**IT IS FURTHER ORDERED THAT** the Court issue a Certificate of Appealability solely with respect to Natekin's claim that counsel was ineffective for failing to hire a court-certified interpreter for discussions with counsel regarding the State's second plea offer. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 8, 2021.

s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge